## COUNTY OF PENOBSCOT.

(*) HUCKINS *versus* CUSHING.

By the charter of the Penobscot Boom Corporation, a toll or boomage is allowed upon logs catched and rafted in the boom.

To secure such toll, there is given to the corporation a lien on the logs.

This lien is dissolved by a voluntary and unconditional delivery of the logs to the owner.

Logs, after being so delivered, were sold by the owner, to whom, among other compensations, the vendee gave a note to pay to *him* the amount of the boomage; — In a suit by the vendor upon the note, — Held, that a payment of the boomage made by the vendee to the *boom corporation*, without request of the vendor, was a voluntary act and constituted no defence.

ON REPORT from *Nisi Prius*, APPLETON, J., presiding.
ASSUMPSIT.

The plaintiff had 172 mill-logs in the Penobscot boom. They were entered on the books of the boom corporation as the property of the plaintiff, and the boomage was charged to him. They were subject to the lien for boomage, $26,13.

On the 15th of May, 1851, the treasurer of the corporation, by his written order, directed the boom agent to deliver them to the plaintiff, and the plaintiff, by written order, directed the agent to deliver them to M. Woodman, which was accordingly done, Woodman being the man commonly employed to receive logs at the boom and to run them to a place where they could be secured below. Woodman's charge was $8,16. At that time there were large charges by the boom corporation against the plaintiff for booming other logs, and the plaintiff had unsettled counter claims. The plaintiff sold the 172 logs to the defendant and, among other compensations for them, received the following paper, signed by the defendant : —

"June 17, 1851. For value received, I promise to pay John Huckins the amount of the Penobscot Boom Company's charge for boomage on the logs, [described,] and also the

amount of Woodman's charge for dropping away said logs from the boom."

It is upon this promise that this suit is brought.

On Sept. 20, 1851, the bill for the boomage was present-ed by the boom treasurer to the defendant for payment, and it was paid by him.

The case was submittted to the Court with jury powers as to inferences of fact.

*Rowe & Bartlett*, for the plaintiff.

*A. W. Paine,* for the defendant.

Does the payment made by the defendant to the boom cor-poration, for the boomage, discharge him from paying again the same amount for the same thing? The intent of the parties obviously was, that the defendant should pay the boom-age. This he has done. On the best view for the plaintiff, he owed for the boomage to the corporation, and the defend-ant owed him for the same. On this view there is a presump-tion of promise from the defendant to the corporation, on which a suit was maintainable. *Dearborn* v. *Parks*, 5 Greenl. 81.

Further, it was necessary for the defendant to make the payment in order to protect his logs from the boomage lien.

HATHAWAY, J. — The plaintiff had one hundred and sev-enty-two logs in the Penobscot boom, and on the fifteenth day of May, 1851, John Winn, treasurer of the boom com-pany, gave him an order for them, and the plaintiff thereupon gave an order for their delivery to Woodman, " who made it his business to drop away logs from the boom."

It appears by the testimony of Winn, that the logs were delivered before he got his pay for the boomage, and that one hundred and forty-four of them were delivered prior to June 17, 1851, on which day the defendant gave the plaintiff his obligation for value received, promising to pay *him* the com-pany's charge for boomage on the logs, and Woodman's charge for dropping them away from the boom, upon which obliga-tion this action was brought.

There seems to be no controversy as to the amount of the boomage and Woodman's charge, which are specified in a bill of particulars annexed to the writ; but the defendant resists the claim for boomage upon the ground that he paid it to the boom company, 20th September, 1851, and Mr. Winn, the treasurer, testifies that he did call and pay it to him on that day.

If the boom company had a lien on the logs for boomage, the order given to the plaintiff by Winn, the treasurer, (which was unconditional,) and the voluntary delivery of the logs had dissolved it.

The plaintiff did not request the defendant to pay the boomage to the company, nor does the case find that he ever promised to pay it to them as a condition of getting the logs.

The defendant could not thus, by his unauthorized interference with the unsettled business of the plaintiff with the boom company, change their relations to each other as debtor and creditor, without the plaintiff's consent.

The payment of the boomage to Winn, was entirely voluntary on the part of the defendant, and cannot legally avail him in defence of the plaintiff's claim.

The plaintiff is entitled to recover the charge for boomage and Woodman's bill, amounting in the whole to thirty-four dollars and twenty-nine cents, with interest from April 4, 1852, when a demand was made by Mr. Bartlett, as testified by him, and a default must be entered.

SHEPLEY, C. J., and TENNEY, RICE and APPLETON, J. J., concurred.

